851 P.2d 993

Donald **WEATHERHEAD,**
**Plaintiff–Respondent,**

v.

**Troll–Master, Inc., an Idaho corporation, Defendant,**

and

**William J. GRIFFIN III and Cynthia J. Griffin, and William J. Griffin and Brenda G. Griffin, and their proprietorship, Acme Machine & Engineering, Defendants–Appellants.**

**No. 19405**

Court of Appeals of Idaho.

Nov. 4, 1992.

Rehearing Denied March 26, 1993.

Petition for Review Denied May 24, 1993.

Cooke, Lamanna, Smith & Cogswell, Priest River, for defendants-appellants. Thomas E. Cooke, argued.

Jenkins & Leggett, Coeur d'Alene, for plaintiff-respondent. Ida R. Leggett, argued.

SILAK, Judge.

This case involves a dispute among the three directors of a close corporation, Donald J. Weatherhead, William J. Griffin (Griffin), and William J. Griffin, III (Griffin III). During the first year after incorporation, disagreements arose between Weatherhead and the Griffins. Ultimately the Griffins voted to remove Weatherhead as president and assumed full management of the corporation. Weatherhead subsequently sued the Griffins alleging fraud and breach of fiduciary duty. He also asserted that the transfer of corporate stock which the Griffins had received was invalid for lack of consideration. The Griffins counterclaimed asserting that Weatherhead converted corporate funds when he withdrew $2,500 from the corporate account to

fund this lawsuit against the Griffins. Weatherhead's fraud and breach of fiduciary duty claims and the Griffins' counterclaim for conversion were tried to a jury, which returned a verdict in favor of Weatherhead on all claims and awarded him $111,578 in damages. The validity of the stock transfer to the Griffins was tried to the court, which invalidated and rescinded the transfer. The Griffins' post-trial motions for judgment notwithstanding the verdict, new trial, and remittitur were all denied by the district court. The Griffins now appeal the judgment entered pursuant to the jury's verdict and the trial court's findings and conclusions, as well as the denial of their post-trial motions. We reverse the judgment and post-trial rulings with respect to the claim of misrepresentation, but affirm the judgment and rulings on post-trial motions in all other respects.

## FACTS AND PROCEDURAL BACKGROUND

In 1982, Donald J. Weatherhead devised an extension handle to use on his outboard motor while trolling. Initially, Weatherhead created the handle solely for his personal use; however, by 1986 he had determined to go into business manufacturing and selling the handles on a full-time basis. In 1986 Weatherhead moved to Idaho and searched for a firm to machine the metal parts which he would use in constructing the handles. Weatherhead contacted the Griffins, father and son, who were the sole owners of a machine and mold-making shop doing business under the name Acme Machine & Engineering (Acme Machine). Weatherhead initially approached the Griffins only seeking to have them manufacture specific components which he would use in assembling the handles; the Griffins, however, suggested a number of ways in which the design of the handles could be improved while reducing the cost of production. Weatherhead liked the Griffins' ideas and over time the Griffins became integrally involved in the production of the extension handles.

On or about September 2, 1987, Weatherhead and the Griffins formed a close corporation called Troll–Master, Inc., for the purpose of manufacturing and marketing the extension handles. Troll–Master's articles of incorporation identified Weatherhead and the Griffins as the initial directors of the corporation. At the first directors' meeting Weatherhead was elected president of the corporation, Griffin was elected vice president and treasurer, and Griffin III was elected as vice president and secretary. The directors resolved to issue 5,000 shares of stock to Weatherhead in exchange for his agreement to give the corporation, among other things, the Troll–Master concept and trademark rights, the initial marketing and marketing opportunities, and the existing inventory. The Griffins were each issued 5,000 shares in exchange for their agreement to have Acme Machine manufacture Troll–Master products and sell them to Troll–Master "at cost," exclusive of any charge for the services of either Griffin. After incorporation, Weatherhead performed the marketing and bookkeeping tasks for the company, and the Griffins, dba Acme Machine, manufactured the company's products.[1]

The disputes during the first year of Troll–Master's operation primarily concerned the amount of charges which the Griffins, as Acme Machine, were submitting to Troll–Master for payment. The Griffins had agreed to finance many of the costs associated with producing and marketing Troll–Master's products, and they also had agreed to be a "last creditor" of Troll–Master. Griffin, based on his personal credit-worthiness, had obtained a commercial loan during the first half of 1988, and he sought to charge Troll–Master for the interest expense associated with the loan. At trial, Weatherhead testified that Griffin obtained this loan essentially for the purpose of paying past-due withholding taxes owed by Acme Machine. Griffin testified that this loan was obtained primarily to finance the production of a new line of Troll–Master products. At any rate,

Weatherhead refused to agree to have Troll–Master pay the interest expense on the loan, and during the summer of 1988 relations and communication between the parties broke down. At a board meeting held on September 6, 1988, the Griffins voted to remove Weatherhead as president of Troll–Master, and elected Griffin III to replace him. After Weatherhead was voted out as president, he ceased to participate in the management of the corporation, and the Griffins ran the affairs of Troll–Master.

On May 1, 1989, Weatherhead filed this suit against the Griffins in their personal and official capacities as officers and directors of Troll–Master. Weatherhead's complaint alleged three causes of action. His first cause of action alleged that the Griffins committed fraud by intentionally misrepresenting at the time of incorporation that they would manufacture products for Troll–Master "at cost" and that they would be a last creditor of the corporation, and then later charging the corporation much more than what it actually cost to produce the handles and demanding that the corporation pay the debt when to do so would have forced the company into bankruptcy. Weatherhead's second cause of action alleged that the Griffins breached their fiduciary duty as officers and directors of Troll–Master by charging Troll–Master for debts which rightfully pertained to Acme Machine, by overcharging Troll–Master for services performed by the Griffins and employees of Acme Machine, and by charging Troll–Master for equipment purchased in the name of the Griffins and Acme Machine, thus engaging in self-dealing in order to enhance their personal interests as owners of Acme Machine at the expense of Troll–Master. In his final cause of action Weatherhead sought an order rescinding the 10,000 shares of Troll–Master stock which had been issued to the Griffins. Weatherhead asserted that the Griffins' agreement to manufacture Troll–Master products at cost, exclusive of any charge

---

**1.** About half of Acme Machine's business pertained to manufacturing Troll–Master's products.

for their services, was a promise of future services, which does not constitute valid consideration for the transfer of corporate stock under Idaho's Business Corporations Act. The Griffins counterclaimed against Weatherhead, seeking the return of $2,500 which they alleged that he converted from corporate funds to finance his suit against the Griffins.

The misrepresentation, breach of fiduciary duty, and conversion claims were tried to a jury, which returned a verdict in favor of Weatherhead on all claims and awarded him $111,578 in damages. In its final judgment, entered on June 5, 1991, the district court made findings and concluded that the Griffins failed to give valid consideration for the Troll–Master stock issued to them, and rescinded the stock transfer.

The Griffins subsequently filed alternate motions for judgment notwithstanding the verdict, a new trial and remittitur of the amount awarded. The Griffins also filed an objection to the form of the judgment, requesting that the trial court state in the judgment that the case was in the form of a stockholder's derivative suit, and therefore the judgment existed in favor of Troll–Master, not Weatherhead personally. The trial court subsequently issued an order denying all of the Griffins' post-trial motions, and overruling their objection to the form of the judgment. The Griffins appeal from the final judgment of the trial court, which was entered pursuant to the jury's verdict and the trial court's findings and conclusions. They also appeal from the trial court's order denying their post-trial motions.

## ISSUES RAISED ON APPEAL

On appeal the Griffins raise a number of issues: (1) whether there was sufficient evidence to support the jury's finding of fraud, (2) whether there was sufficient evidence to support the jury's finding of breach of fiduciary duty, (3) whether the district court erred in refusing to modify the form of the judgment, (4) whether there was sufficient evidence to support the jury's finding that Weatherhead did not convert corporate funds, (5) whether the district court abused its discretion in denying the Griffins' motion for judgment NOV, (6) whether the district court abused its discretion in denying the Griffins' motion for new trial, and (7) whether the district court abused its discretion in denying the Griffins' motion for remittitur. We will discuss each of these issues in turn.

## ANALYSIS

■ 1. *Misrepresentation.* On appeal, we review the jury's verdict to determine whether it is supported by substantial competent, although conflicting, evidence. *Idaho First Nat'l Bank v. Wells*, 100 Idaho 256, 262–63, 596 P.2d 429, 435–36 (1979). To establish his claim of misrepresentation, Weatherhead had the burden of showing: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation will be acted upon in a reasonably contemplated manner; (6) the listener's ignorance of its falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely on the truth of the representation; and (9) the listener's consequent and proximate injury. *Galaxy Outdoor Advertising v. Idaho Transp. Dept.*, 109 Idaho 692, 696, 710 P.2d 602, 606 (1985). The party alleging fraud has the burden of proving each of these elements by clear and convincing evidence. *Smith v. King*, 100 Idaho 331, 334, 597 P.2d 217, 220 (1979).

■ In this case, the jury's finding of fraud is not supported by substantial evidence because Weatherhead failed to introduce any evidence to show that the Griffins misrepresented an existing fact. Weatherhead introduced evidence at trial showing that the Griffins promised to manufacture Troll–Master products "at cost," exclusive of any charges for their services, and that they would be last creditors of Troll–Master. Weatherhead also produced evidence showing that the Griffins subsequently breached both of those promises. However, as we explained in the recent case of *Kepler v. WHW Management, Inc.*, 121 Idaho 466, 478, 825 P.2d 1122, 1134 (Ct.

App.1992), a promise to do something in the future, which is subsequently broken, does not constitute a misrepresentation of existing fact unless at the time of making the promise the promisor had no intention of performing the promise. Thus, if at the time the Griffins promised to perform the future acts, they did in fact intend to perform those acts, the fact that they later failed to perform their promise does not raise an action for fraud, but an action for breach of contract. If, however, at the time of promising, the Griffins had no intention of performing the promise, the Griffins would have fraudulently misrepresented an existing fact, their present intention. *Kepler*, 121 Idaho at 478, 825 P.2d at 1134 (a promise made without the intent to perform constitutes a sufficient basis for an action of fraud because it is a misrepresentation of an existing fact, the promisor's present intent).

Based on the facts and principles set forth above, in order to prove that the Griffins misrepresented their intent to perform a promise, Weatherhead was required to prove by clear and convincing evidence that at the time of making the promise, the Griffins had no intention of performing it. While a mere breach of a contract or promise is never enough in itself to show fraudulent intent, that intent may be inferred from circumstantial evidence. *Kepler*, 121 Idaho at 478, 825 P.2d at 1134. In this case, although Weatherhead produced evidence showing that the Griffins breached their promises, he failed to produce any evidence, either direct or circumstantial, from which the jury could have found that the Griffins, at the time of promising, had no intention of performing the promises. Because there is no substantial evidence from which the jury could have found that the Griffins misrepresented an existing fact, we set aside that portion of the jury's verdict which found that the Griffins were liable for misrepresentation.

■ *2. Breach of Fiduciary Duty.* The jury found that the Griffins breached their fiduciary duty as officers and directors of Troll–Master. On appeal, the Griffins challenge the sufficiency of the evidence supporting this verdict. Again, our standard of review is whether the jury's verdict is supported by substantial competent, although conflicting, evidence. *Idaho First Nat. Bank*, 100 Idaho at 262–63, 596 P.2d at 435–36.

Idaho law provides that "[a] director shall perform his duties as a director ... in good faith, in a manner he reasonably believes to be in the best interest of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances." I.C. § 30–1–35. Our Supreme Court has held that "directors stand in a fiduciary relation to the corporation, and, hence, to the stockholders...." *Hanny v. Sunnyside Ditch Co.*, 82 Idaho 271, 276, 353 P.2d 406, 409 (1960); *Coeur D'Alenes Lead Co. v. Kingsbury*, 59 Idaho 627, 630, 85 P.2d 691, 692 (1938).

Weatherhead claims that the Griffins breached their fiduciary duty as directors of Troll–Master by charging Troll–Master for debts which rightfully belonged to Acme Machine; by overcharging Troll–Master for labor performed by the Griffins and employees of Acme Machine; and by purchasing equipment in the name of the Griffins and Acme Machine, and charging the cost of that equipment to Troll–Master. Weatherhead asserts that the Griffins breached their fiduciary duty to the corporation by engaging in self-dealing which unfairly enhanced their personal interests as owners of Acme Machine at the expense of Troll–Master.

Idaho's business corporations statute provides that under certain conditions corporate directors may validly enter into transactions with the corporation. The statute provides that no transaction between a corporation and one or more of its directors, or between the corporation and any other entity in which one or more of its directors are financially interested, shall be either void or voidable because of such relationship or interest, if:

(a) the fact of such relationship or interest is disclosed or known to the board of directors or committee which authorizes, approves or ratifies the contract or

transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

(b) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent, in which vote or consent such interested directors may participate to the extent that they are also shareholders; or

(c) the contract or transaction is fair and reasonable to the corporation and the fact of such relationship or interest is fully and fairly disclosed or known to the corporation.

I.C. § 30–1–41.

Under the statute, a transaction between a corporation and one of its directors is not automatically void or voidable as a result of the director's fiduciary relationship with the corporation, if subsection (a), (b) or (c) applies. By implication we must conclude that if neither subsection (a), (b) or (c) applies, a transaction between an interested director and the corporation is automatically void or voidable.

After a careful review of the trial transcript, we conclude that there was substantial competent evidence for the jury to find that the legitimizing conditions set forth in subsections (a), (b) and (c) were not met in this case. At trial, Weatherhead introduced substantial evidence from which the jury could have concluded the following: that the Griffins charged Troll–Master $1,900 for insurance which was purchased to cover Acme Machine's assets; that the Griffins charged Troll–Master $10,220 for the interest charges on a loan procured by the senior Griffin in his own name, which was used at least in part to pay past-due withholding taxes owed by Acme Machine; that the Griffins charged Troll–Master $3,200 for their own services, contrary to their prior agreement with the corporation; that the Griffins double-charged Troll–Master $37,697 for work performed by an Acme Employee; that the Griffins charged Troll–Master $67,272 more than what it cost Acme Machine to manufacture Troll–Master products, contrary to their prior agreement to manufacture Troll–Master products and sell them to the corporation "at cost"; and that the Griffins charged Troll–Master $6,197 for a display booth which the Griffins purchased in their own name and in the name of Acme Machine.

In order for either subsection (a), (b) or (c) of I.C. § 30–1–41 to apply, the interested directors must fully and fairly disclose the facts surrounding their interest in the transaction to either the corporation's shareholders or its disinterested directors. In this case, there was ample evidence from which the jury could have concluded that the Griffins did not fully and fairly disclose the facts surrounding these transactions to Weatherhead, a shareholder and the only disinterested director, but tried to conceal the improper nature of the transactions by making the alleged overcharges appear to be legitimate Troll–Master debts. The Griffins did not assess most of the improper charges to Troll–Master until after Weatherhead was removed as president of the corporation and was no longer informed of the corporation's bookkeeping. Based on this evidence the jury could have concluded that the transactions between the Griffins and Troll–Master did not comply with conditions of either I.C. § 30–1–41(a), (b) or (c). Thus, they breached their fiduciary duty to the corporation and the transactions were automatically void or voidable.

■ Additionally, we note that I.C. § 30–1–41 does not provide a basis for validating for all purposes a transaction between an interested director and the corporation whenever the technical requirements of one of the subsections have been complied with. 18B Am.Jur.2d *Corporations* § 1738 (1985) (discussing the Revised Model Business Corporations Act which is substantially identical to Idaho's statute). Rather, the statute "simply establishes that the transaction is not automatically void or voidable solely by reason of the director's interest. In other respects not covered by the statute, equitable principles continue to be applicable. Nothing in the statute sanctions unfairness to the corporation nor removes

the transaction from judicial scrutiny." *Id.* We conclude that even if one of I.C. § 30–1–41's subsections did apply, based on the facts recited above the jury could have found that the Griffins breached their fiduciary duty to Troll–Master by engaging in unfair self-dealing to promote their own interests at the expense of Troll–Master. The evidence is also sufficient to show that the Griffins' breach of their fiduciary duty damaged Troll–Master in the amount awarded by the jury, $111,578. Because the jury's verdict with respect to the breach of fiduciary duty claim and the amount of damages is supported by substantial competent, although conflicting, evidence, we will not disturb that portion of the verdict on appeal.

■ The Griffins assert that the jury's finding of breach of fiduciary duty is inconsistent with the trial court's determination to rescind the issuance of their Troll–Master stock. They claim that if the issuance of their Troll–Master stock is void they could not have voted any shares to elect themselves directors and officers of Troll–Master, and therefore they could not have had or breached any fiduciary obligation to the corporation. The Griffins' argument is unfounded for the following reasons.

Troll–Master's corporate existence began upon the issuance of its certificate of incorporation. I.C. § 30–1–56. The number of directors and the names of the directors of the initial board of directors were fixed by Troll–Master's articles of incorporation. I.C. § 30–1–36. Troll–Master's articles of incorporation specified that the number of directors constituting the board of directors would be three, and identified the initial members of the board as Weatherhead and the Griffins. The Griffins did not become directors of Troll–Master by voting any shares in the corporation. Idaho law does not require directors to be shareholders of the corporation unless the articles of incorporation or bylaws so require. I.C. § 30–1–35. We hold that Weatherhead and the Griffins were validly appointed to be the initial directors of Troll–Master, irrespective of the shares they subsequently did or did not acquire in the corporation.

Under Idaho law, the Griffins and Weatherhead held their positions as initial directors until the first annual shareholders' meeting, and until their successors were elected and qualified. I.C. § 30–1–36. The record indicates that at the first annual shareholders meeting, Weatherhead and the Griffins each voted their shares to re-elect themselves to the board of directors. Even if the Griffins did not, in fact, have any shares with which to re-elect themselves to the board of directors,[2] pursuant to I.C. § 30–1–36, and Troll–Master's articles of incorporation, the Griffins were to remain directors until their successors were duly elected and qualified. During the time relevant to this action the record is clear that the Griffins' successors were never elected or qualified, and that the Griffins at all times continued to function as directors of the corporation. Accordingly, we hold that the Griffins were directors of Troll–Master at all times relevant to this action, that as directors they owed a duty of loyalty to Troll–Master, and, pursuant to our reasoning above, the jury's finding that the Griffins breached that duty is supported by substantial competent, although conflicting evidence.

■ 3. *Form of the Judgment.* Weatherhead filed this suit naming himself as plaintiff, with Troll–Master and the Griffins as defendants. Weatherhead styled the general allegations of his complaint to follow the form and substance prescribed by I.R.C.P. 23(f), which rule sets forth the requirements for bringing a stockholder's derivative suit. However, the allegations of Weatherhead's complaint state a personal claim against the Griffins for misrepresentations which induced Weatherhead personally to act to his detriment, and a derivative claim against the Griffins for breach of the fiduciary duty they owed to the corporation. When the district court entered final judgment against the Griffins, it

---

**2.** The district court expressly refused to conclude that the Griffins' shares were void ab initio.

did so in favor of Weatherhead in his personal capacity, rather than in favor of the corporation. The Griffins filed an objection to the form of the judgment, claiming that the action was brought as a derivative suit, and that judgment should not be entered in favor of Weatherhead personally, but in favor of Troll–Master. In arguing the issue at a post-trial hearing, counsel for Weatherhead stated, "I view this as a direct action for fraud and a derivative action for the breach." This statement accords with the form and substance of Weatherhead's complaint.

Based on our conclusions set forth above, Weatherhead's fraud claim was not proven by substantial evidence, and the only claim remaining which supports the jury's award of damages is the breach of fiduciary duty claim. As Weatherhead has admitted, the breach of fiduciary duty claim is a derivative claim. In his complaint, Weatherhead alleged that the Griffins breached a duty they owed to the corporation, not to him personally, and that that breach harmed the corporation. In fact, all of the acts alleged by Weatherhead to be a breach of the Griffins' fiduciary duty were acts in which the Griffins wrongfully charged the corporation to enhance their personal interests. "A stockholder's derivative suit ... is not for the individual benefit of the stockholder. It is established that both the cause of action and the judgment thereon belong to the corporation." *LaHue v. Keystone Inv. Co.*, 6 Wash.App. 765, 496 P.2d 343, 352 (1972). We conclude that the district court erred in refusing to modify the form of the judgment to reflect that the judgment was in favor of Troll–Master, rather than Weatherhead in his personal capacity.

■ 4. *Conversion.* The Griffins assert that Weatherhead did not have authority to withdraw $2,500 from Troll–Master's account to finance the litigation of this lawsuit. It is undisputed that Weatherhead withdrew the $2,500 from Troll–Master's account for this purpose. It is significant to note that this was not a direct action by Troll–Master against the Griffins. As we held above, the claim upon which the

jury's verdict rests was a derivative claim brought by Weatherhead on behalf of the corporation, against the Griffins. Proper withdrawal and expenditure of the $2,500 from Troll–Master's account required corporate action. It does not appear from the record that Weatherhead, as president, was authorized to take such corporate action. The officers of a corporation have "such authority and perform such duties in the management of the corporation as may be provided in the bylaws, or as may be determined by resolution of the board of directors not inconsistent with the bylaws." I.C. § 30–1–50. Whether Troll–Master has any bylaws, and what those bylaws might provide, is not apparent in the record before us. In the absence of bylaws, we note that "[a]ll corporate powers shall be exercised by or under authority of, and the business and affairs of a corporation shall be managed under the direction of, a board of directors except as may be otherwise provided in this act or the articles of incorporation." I.C. § 30–1–35. We recognize that there was testimony adduced at trial to the effect that Weatherhead had authority to make withdrawals from Troll–Master's account; however, no fact or law has been presented to us from which we could conclude that Weatherhead, as president of the corporation, had authority to withdraw Troll–Master funds to finance a lawsuit against the Griffins which was not filed by the corporation with approval of the board of directors. Therefore, we hold that it was improper for Weatherhead to use Troll–Master funds for this purpose.

■ We note, however, that it is "well settled that where a stockholder brings an action for the benefit of the corporation and the suit terminates favorably to the stockholder and thus inures to the benefit of the corporation the stockholder is entitled to reimbursement for his expenses, including attorney's fees." *Coeur D'Alenes Lead Co.*, 59 Idaho at 632, 85 P.2d at 693. Thus, although Weatherhead is liable to the corporation for the $2,500 he withdrew to finance this action, we hold that Weatherhead is entitled to be reimbursed by Troll–Master for all of the expenses he

incurred in prosecuting this suit, including his attorney fees.

■ 5. *Motion for Judgment Notwithstanding the Verdict.* We review the denial of a motion for judgment notwithstanding the verdict under the same standard employed by the trial court in determining whether to grant or deny the motion. In order to prevail on their motion for judgment notwithstanding the verdict, the Griffins bore the burden of demonstrating to the trial court that, even when the facts presented are accepted as true and viewed in a light most favorable to the non-moving party, the jury's verdict was not supported by substantial and competent evidence. *Brand S Corp. v. King*, 102 Idaho 731, 732–33, 639 P.2d 429, 430–31 (1981); *Mann v. Safeway Stores*, 95 Idaho 732, 734–36, 518 P.2d 1194, 1196–98 (1974). As we held above, with respect to the claim for breach of fiduciary duty and the amount of the damages awarded, the jury's verdict is supported by substantial and competent evidence. Therefore, the trial court did not err in denying the Griffins' motion for judgment notwithstanding the verdict with respect to those issues. However, as we also held above, there was no substantial evidence to support the claim that the Griffins made a fraudulent misrepresentation. Therefore, we hold that the district court erred by not granting the Griffins' motion for judgment notwithstanding the verdict with respect to that claim.

■ 6. *Motion for a New Trial.* The trial court is vested with broad discretion in determining whether to grant or deny a motion for new trial under Rule 59(a), and its determination will not be overturned absent a manifest abuse of that discretion. *Fitzgerald v. Walker*, 121 Idaho 589, 593, 826 P.2d 1301, 1305 (1992); *Bott v. Idaho State Bldg. Authority*, 122 Idaho 471, 475, 835 P.2d 1282, 1286 (1992). To determine whether the trial court has properly exercised its discretion in ruling on a motion for new trial, we conduct a multi-tiered inquiry to determine:

(1) whether the lower court rightly perceived the issue as one of discretion;

(2) whether the court acted within the outer boundaries of its discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Bott,* 122 Idaho at 475, 835 P.2d at 1286.

After hearing arguments from both sides at the hearing on the Griffins' post-trial motions, the district court stated that it intended to deny the motions because the jury's verdict was amply supported by the evidence and eminently fair. After a careful review of the transcripts of the trial and the hearing on the post-trial motions, we conclude that the trial judge correctly perceived that whether to grant the motion for new trial was within his discretion, that he acted within the outer boundaries of that discretion and consistently with the applicable legal standards, and that he reached his decision to deny the motion for a new trial by an exercise of reason. Therefore we will not reverse the trial court's denial of the motion.

7. *Motion for Remittitur of the Amount of the Judgment.* "The amount of damages is a question of fact which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial." *Bratton v. Slininger*, 93 Idaho 248, 253, 460 P.2d 383, 388 (1969) (overruled on other grounds in *Mann,* 95 Idaho at 734–36, 518 P.2d at 1196–98). This Court on review will disturb an award of damages "only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury." *Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967). In denying the Griffins' motion for remittitur, the trial court stated that the amount of the verdict was supported by the evidence, and that the verdict and the result were eminently fair. As we stated above, we conclude that the verdict as to the amount of damages is supported by evidence. Thus, we conclude that the amount of the verdict does not appear as a matter of law to be excessive, nor does it appear to be the result of passion, prejudice, or corruption on the part of the jury.

Therefore, we affirm the trial court's denial of the Griffins' motion for remittitur.

## CONCLUSION

Based on the reasoning set forth above, we hold that there was insufficient evidence to support the jury's finding of fraud, but there was sufficient evidence to support the jury's finding of breach of fiduciary duty and the amount of damages awarded as a result of that breach. We also hold that the district court erred in refusing to modify the form of the judgment so that the judgment is in favor of Troll–Master, not Weatherhead. Based on the undisputed facts, we hold that Weatherhead's appropriation of Troll–Master funds to finance this action was improper, and we set aside that portion of the jury's verdict which found to the contrary; however, Weatherhead is entitled to be reimbursed by Troll–Master for the expenses, including attorney's fees, which he incurred as a result of prosecuting this action. With respect to the fraud claim, the district court abused its discretion in denying the Griffins' motion for judgment notwithstanding the verdict, however the district court did not err in denying the motion for judgment notwithstanding the verdict with respect to the breach of fiduciary duty claim and the amount of damages awarded. We also conclude that the district court did not abuse its discretion in denying the Griffins' motion for new trial, and in denying the Griffins' motion for remittitur.

Costs on appeal are awarded to Weatherhead. No attorney fees are awarded on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.