877 P.2d 919

**Henry VIEBROCK, Sr.; Marge Huff and Joe Huff, husband and wife; Henry Viebrock, Jr. and Olive Viebrock, husband and wife; Gary Viebrock and Donna Viebrock, husband and wife, Plaintiffs–Respondents,**

v.

**Thomas N. GILL and Kathleen Gill, husband and wife, Defendants–Appellants.**

No. 20608.

Supreme Court of Idaho, North Idaho, April 1994 Term.

July 12, 1994.

Sims, Liesche, Newell, Kelso, Wallace & Wallace, Coeur d'Alene, for appellants. Michael J. Newell, argued.

Michael B. McFarland, Coeur d'Alene, for respondents.

BISTLINE, Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

In approximately 1918, two neighboring landowners, Henry Viebrock I[1] and Walter Sachse, jointly constructed a private access road across their adjoining properties. The access road leaves a state highway and angles across the Viebrock property. The road then crosses into the Sachses' property (now owned by the Gills) and switches back to the top of a ridge, commonly known as the rimrock. After again crossing into the Viebrocks' property, the road apparently loops back at the top of the hill and terminates near the boundary between the two properties.

Evidence at trial indicated that the road was used by Viebrock, Sachse, and their successors without conflict from the time of its construction until 1988 or 1989. Walter Sachse conveyed his property to Gene Gill in 1942. Gene Gill conveyed the portion of his property that abuts the Viebrocks' property to his son, Thomas Gill, in 1982. In approximately 1989, Thomas and Kathleen Gill began to reside on the property on a full-time basis. The Gills became displeased by the recreational use of the road (specifically the use of all-terrain vehicles) by the son of Gary Viebrock. In September 1989, after some confrontations between the parties and unsuccessful efforts at resolution, the Gills constructed a gate across the road and locked it. The gate was apparently located on the Viebrocks' property. At some point, the Gills also cut down some trees that were located on the Viebrocks' property.

The Viebrocks (including the son, grandson, and great-grandson of Henry Viebrock I) filed a complaint on February 12, 1990, seeking a "non-exclusive easement" to the road based on seventy years of mutual consent, or alternatively to quiet title to the road in both parties so that neither party would be subject to an easement. The Viebrocks also sought damages for timber trespass and for intentional infliction of emotional distress resulting from the locked gate. The Viebrocks abandoned the timber trespass claim at trial.

The Gills answered and counterclaimed for an exclusive easement to the portion of the road that lies on the Viebrocks' property based on prescription, implication, reservation and/or necessity; for injunctive relief preventing the Viebrocks from using the road; and for reimbursement for the Gills' maintenance of the road if the Viebrocks were permitted to continue using the road. Neither party pleaded or litigated the issue of the statute of frauds.

The Viebrocks moved for partial summary judgment in September 1990. Questions relating to the admissibility of an affidavit executed by Henry Viebrock II (the son of Henry Viebrock I) in support of the motion caused the motion to be continued. During the trial, a portion of Henry Viebrock II's affidavit reciting his belief that the neighboring families had always owned equal interests in the road, was admitted into evidence over the Gills' objection.

The district court issued its memorandum of decision on June 3, 1992, concluding that (1) Sachse and Viebrock established the road by agreement; (2) each party holds a permanent unlimited easement over the road for access to and from the rimrock; (3) neither party abandoned their easement rights; and (4) the Viebrocks failed to establish any damages as a result of Gills' installation of the locked gate across the road. The district court issued its judgment on March 26, 1993, upon the completion of a survey of the road.

The Gills appeal from the district court's decision and judgment.

## ANALYSIS

The Gills contend that the affidavit of Henry Viebrock II should have been excluded from evidence and that the district court's findings of fact and conclusions of law are unsupported by substantial and competent evidence. In particular, the Gills challenge the following findings of fact:

3. Sachse and Viebrock jointly established the road in question for joint access from Government Way to their respective

1. At trial, confusion regarding the three Henry Viebrocks led the Viebrocks' counsel to designate, for purposes of convenience, the first Henry Viebrock as Henry Viebrock I; Henry Viebrock Sr. as Henry Viebrock II; and Henry Viebrock Jr. as Henry Viebrock III. The designation is adopted in this opinion.

lands on the rimrock.... No limitations were placed upon the use of the road. 10. Viebrock used the road from the time of its construction to the present time for access to the rimrock portions of the property. 16. No party has expressed any abandonment of their interests in the roadway. 19. The road is in substantially the same location as originally constructed. Any widening of the roadway is de minimis.

Our review of findings of fact is limited. We do not weigh the evidence as the district court did; instead we inquire whether the findings of fact are supported by substantial and competent evidence and therefore not clearly erroneous. I.R.C.P. 52(a); *State ex rel. Haman v. Fox,* 100 Idaho 140, 144, 594 P.2d 1093, 1097 (1979). In reviewing the record, we are mindful that the district court possesses the unique opportunity to assess the credibility of the witnesses appearing before it. I.R.C.P. 52(a); *Glenn v. Gotzinger,* 106 Idaho 109, 110–11, 675 P.2d 824, 826–27 (1984).

Turning to the first finding that is challenged by the Gills, we conclude that substantial and competent evidence supports the finding that the road was jointly constructed by Viebrock and Sachse. Al Sachse, the son of Walter Sachse, was ten years old when the road was constructed. He testified that the road was jointly constructed by his father and the Viebrocks, and that all of the horses and scrapers used to build the road were owned either by the Viebrocks or his father. Likewise, Donna Viebrock, Henry Viebrock III (grandson of Henry Viebrock I), and Gary Viebrock testified, without objection from the Gills, that Henry Viebrock II had assisted his father and Walter Sachse in building the road.

The center of this dispute is the purpose for which the access road was constructed by the neighboring families. The Gills argue that no evidence supports the finding that Viebrock and Sachse agreed that Viebrock could use the road for access to the rimrock. The Gills also argue that Paragraph 10 of Henry Viebrock II's affidavit was erroneously admitted into evidence, that the district court relied on this paragraph as sole evi-

dence of an agreement, and that this cause should therefore be reversed and remanded.

Paragraph 10 of Henry Viebrock II's affidavit stated as follows:

'It has always been my understanding and belief that both neighboring families had equal interests in the road; and neither Walter Sachse nor Gene Gill, during 72 years, ever gave me any indication that their understanding was any different.'

Since Henry Viebrock II died one week before trial, the Viebrocks sought to have his affidavit admitted into evidence pursuant to Idaho Rule of Evidence 803(20). Rule 803(20) allows into evidence hearsay statements relating to the reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community. The district court admitted Paragraph 10 of the affidavit into evidence on the belief that it related to the reputation of the road.

Since we conclude that substantial and competent evidence other than Paragraph 10 of Henry Viebrock II's affidavit supports the district court's finding that the road was constructed for the parties' joint use, it is unnecessary for us to address either the scope of evidence that is admissible in Idaho pursuant to I.R.E. 803(20) or whether the affidavit at issue here was improperly admitted.

What type of easement, if any, that is owned by the Viebrocks is a question of law. This Court is not bound by the legal conclusions of the district court and may draw its own conclusion from the facts presented. *Ada County Assessor v. Roman Catholic Diocese of Boise,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993) (quoting *Clark v. Saint Paul Property & Liab. Ins. Co.,* 102 Idaho 756, 757, 639 P.2d 454, 455 (1981)).

The circumstances surrounding the construction of the road, the location of the road, and the subsequent use of the road convince this Court that the district court reasonably could have found that the Viebrocks and the Sachses agreed to the construction of a road which would serve both parties as a mutual easement. At the time of

the road's construction, both neighbors needed access to the rimrock. Both neighbors supplied the labor and equipment, building the road so that it crossed both properties. The evidence at trial tended to show that both neighbors used the road immediately following its construction and that neither attempted to exclude the other. Henry Viebrock III testified at least twice, without objection by the Gills, that he had always understood the road to be jointly owned by both families. Donna Viebrock testified, without objection by the Gills, that Henry II had always referred to the road as jointly owned by the Viebrocks and Sachses.

■ The Gills invite this Court to infer that the Viebrocks assisted in the construction of a road, located partly on the Viebrocks' property, for the exclusive use of the Sachses. We decline the invitation. Because an exclusive right to an easement effectively strips the servient estate owner of the right to use his or her land for certain purposes, thus limiting his or her fee, exclusive easements are not generally favored by the courts. Of course, the parties may agree to create an exclusive easement. *Latham v. Garner*, 105 Idaho 854, 856, 673 P.2d 1048, 1050 (1983) (citations omitted). In the case before us, however, there is no direct or circumstantial evidence in the record showing that Henry Viebrock I agreed to allow Walter Sachse and Walter Sachse's successors to use the access road to the exclusion of the Viebrock family. Rather, the record discloses that Henry Viebrock I and his successors have had continual use of the road.

This Court has implicitly recognized that joint construction of a means of access and a lengthy period of joint use can constitute substantial and competent evidence of a mutual easement. In *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961), the parties were adjoining landowners who for forty years used in common a driveway that was located on both parcels of land. The driveway had been constructed and improved by the parties' predecessors, but no written agreement documented the easement. Upon actions by the defendants that interfered with the plaintiffs' use of the driveway, the plaintiffs sought a declaration of a perpetual mutual easement. This Court enforced plaintiffs' perpetual right to use the driveway, ruling that:

> where adjoining property owners lay out a way or alley between their lands, each devoting a part of his own land to that purpose, and such way is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close the part which is on his own land.

*Sinnett v. Werelus*, 83 Idaho at 521, 365 P.2d at 955–56 (citations omitted).

Similarly, in *Eagle Rock Corp. v. Idamont Hotel Co.*, 59 Idaho 413, 85 P.2d 242 (1938), this Court upheld an easement established by an oral agreement, relying primarily on the fact that the claimant had contributed to construction of the easement. Use of the easement therefore was deemed to constitute a form of consideration. *Eagle Rock Corp.*, 59 Idaho at 431–36, 85 P.2d at 249–51 (discussing cases enforcing unwritten mutual easements).

Based on these precedents and the evidence supporting the district's court's findings of fact, this Court affirms the district court's conclusion of law that the Viebrocks and the Sachses established the road between their properties for perpetual and mutual access.

■ Substantial and competent evidence supports the remainder of the district court's findings as well. As stated above, the repeated use of the road belies the Gills' claim that the Viebrocks abandoned their easement. The Gills' allegation that the road has changed substantially since it was constructed is likewise unsupported by the evidence. Widening portions of the road does not constitute a change in the location of the easement.

■ However, the district court erred by concluding as a matter of law that the Viebrocks own an "easement without limitation," based on his factual finding that no limitations were put on either party's use. An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner of the servient estate.

*Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991) (quoting *Sinnett,* 83 Idaho 514, 365 P.2d 952). An unlimited easement is virtually a conveyance of ownership, rather than an easement. 3 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property,* ¶ 405 at 34–13 (Supp.1991). Accordingly, this Court has quoted with approval the rule that an easement that has been granted or reserved in general terms, without any limitations as to its use, is confined to unlimited reasonable use. *Abbott,* 119 Idaho at 548, 808 P.2d at 1293 (quoting 25 *Am.Jur.2d Easements and Licenses* § 74, at 479–80 (1966)). The decision and judgment of the district court must be so modified.

## CONCLUSION

The amended decision and judgment of the district court is affirmed as modified. Costs, but no attorney fees, to the Viebrocks.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.