910 P.2d 795

**Michael J. HALEY, Personal Representative of the Estate of Rosemary Haley, Deceased, Plaintiff–Appellant,**

v.

**Vernon B. CLINTON, Defendant–Respondent.**

No. 21522.

Court of Appeals of Idaho.

Jan. 12, 1996.

Petition for Review Denied Feb. 27, 1996.

James T. Jones, Boise, for appellant.

Cosho, Humphrey, Greener & Welsh, Boise, for respondent. Phil E. De Angeli argued.

PERRY, Judge.

In this case we are asked to review the district court's judgment awarding damages for Vernon Clinton's breach of a written agreement requiring that he pay certain attorney fees incurred by Rosemary Haley. We are also asked to review whether the district court properly concluded that Clinton and Haley's community estate was not entitled to a return of funds allegedly misappropriated by Clinton from a closely held corporation. With respect to the award of attorney fees, we vacate the judgment and remand. As to the refusal to require the return of funds to the community estate, we affirm.

## I.

### FACTS AND PROCEDURE

Rosemary Haley and Vernon Clinton began a relationship in the early 1960s. It is undisputed that this relationship constituted a common law marriage beginning in 1967. Both parties came into the relationship with considerable assets and property. During the course of the marriage, Clinton started, funded and operated Acequia, Inc., an Idaho

subchapter S corporation created to manage farming operations on Clinton's Idaho land.

In 1981, the parties divorced and a property settlement agreement was reached. The agreement divided the couple's land holdings and gave each party half of the shares of stock in Acequia. In July of 1982, Acequia filed a petition for Chapter 11 bankruptcy. Several of the creditors, including Haley, requested that the bankruptcy court appoint a trustee, alleging that Clinton had failed to disclose material information and had engaged in mismanagement of the corporation. As part of that proceeding, Clinton gave a proxy to Haley for his share of votes, effectively turning over to her control of the company.

On December 3, 1982, Haley and Clinton signed a separate agreement regarding the payment of attorney fees that each had incurred. Section 6 of this agreement stated:

> The parties agree to and will support the application by Acequia, Inc. to the Bankruptcy Court for approval to pay or reimburse for the payment of attorney fees and costs rendered to or incurred on behalf of Rosemary Haley by the law firms of Thompson, Hine and Flory, Hogue, Speck & Aanestad, and Luboviski, Wygle and Fallowfield, from October 23, 1981 to and including the date of this Agreement. The parties further agree that any such attorneys fees and costs not paid by Acequia, Inc. and not previously paid by Rosemary Haley, together with attorneys fees and costs rendered to or incurred on behalf of Vernon B. Clinton by the law firms of Kneeland, Laggis, Korb, Collier, Benjamin & Russell, and Schlender & Praggastis, during the same period, and not previously paid by Acequia, Inc. or Vernon B. Clinton, shall be paid from the noncorporate assets of the parties prior to the division thereof as described in Section 5 above, and shall be considered as the joint and equal obligations of the parties regardless of the amount or the party benefitted by the payment of such fees and costs.

The parties' request to the bankruptcy court to have Acequia pay the referenced attorney fees was denied.

On October 22, 1987, Haley filed a complaint, initiating the present action. In her complaint, and a later amended complaint, Haley alleged that Clinton failed to comply with the agreement to pay half of Haley's fees for the specified period, which she claimed amounted to $71,736.13. She also sought prejudgment interest thereon. Haley's amended complaint further alleged that between 1976 and 1981, funds had been transferred from Acequia to Clinton which were not adequately accounted for by Clinton. Haley claimed a community property interest in these funds and sought an accounting and an award to her individually of one-half of all funds transferred to Clinton personally from Acequia. Haley died in February of 1992 and this action has been continued by her estate.

A court trial was held on January 12, 1994, and the district court filed its written opinion on June 17, 1994. The district court determined that Haley was entitled to attorney fees under the agreement in the amount of $6,135.74.

As to Haley's averment of funds wrongfully transferred to Clinton, the district court determined that issue preclusion barred consideration of the claim. In 1984, Acequia, then under Haley's control, had brought an action in federal court against Clinton. In that action, the corporation sought to recover as fraudulent certain transfers that the corporation had made to Clinton prior to the bankruptcy petition. Acequia obtained a judgment that was affirmed in part and reversed in part by the Ninth Circuit Court of Appeals, and the action was remanded for further proceedings. *In re Acequia, Inc.*, 34 F.3d 800 (9th Cir.1994). In the present case, the district court found that because all the transfers in question had been previously litigated in the federal action by Acequia against Clinton, and because Clinton had been ordered to repay to the corporation all funds from the wrongful transfers, Haley was collaterally estopped from pursuing these claims individually.

Haley now appeals, claiming that the district court erred by awarding her only $6,135.74 when the actual amount of fees due to her was much higher. She also claims

that she is entitled to prejudgment interest on any fees awarded under the agreement. Finally, Haley alleges that the district court erred in concluding that her claim for corporate assets appropriated by Clinton was barred by collateral estoppel or by claim preclusion due to litigation between Acequia and Clinton in federal bankruptcy court.

## II.

## ANALYSIS

### A. Calculation of Attorney Fees

In determining the amount of fees to be awarded under the agreement, the district court heard a great deal of varying testimony regarding the attorney fees incurred from October 23, 1981, to December 3, 1982. The evidence consisted of documents, including billing statements, affidavits and answers to interrogatories. The attorney responsible for Haley's case also testified. The district court, in its order, issued the following explanation as to how it determined the amount of the award:

> Mr. Cundra states [in his affidavit] that the value of professional services rendered during the period of 1981 through 1983 totals $147,307.50. Mr. Cundra's law firm has "previously received payments on account of $73,645.04 which have been applied against the amount owing for compensation for professional services leaving a balance due and owing of $73,662.46."
>
> Exhibit R is Rosemary Haley's answers to interrogatories dated February 10, 1988. Ms. Haley states therein that she made numerous payments from February 6, 1981 through July 22, 1982. That such total amount was $127,436.44. The amount of $22,978.25 has been added to Cundra's bill by the law firm of Moffatt, Thomas, et. al. This amount has been set forth in the Affidavit of Cundra, Exhibit E. There are also attorney's fees set forth therein from the firm of Ling, Nielson and Robinson. Both firms accumulated counsel fees paid by Cundra's firm in the amount of $35,322.04.
>
> This leaves an outstanding balance of $44,252.79.
>
> Rosemary Haley stated in her affidavit of June 17, 1988 that she had paid the amount of $38,117.05 to the firm of Thompson, Hine and Flory. See Exhibit A.
>
> In the proceedings before this court Mr. Cundra testified on cross-examination that in response to the question: "did you give Rosemary Haley all the bills that your firm has submitted? A. We rendered all bills, we gave her all bills that we rendered." Partial Transcript of Proceedings, pg. 47.
>
> The court finds that the amount claimed by Mr. Cundra's firm and the total documented fees in this particular case have been paid by Rosemary Haley leaving a balance due of $6,135.74. As there is no evidence that any further billings have been documented, defendant Clinton will be responsible for this amount.

In reviewing the district court's factual determinations, we are mindful of the district court's unique opportunity to assess the credibility of witnesses and weigh the evidence presented. We are not free to weigh the evidence as the district court did. Instead, we simply inquire whether the findings of fact are supported by substantial and competent evidence, and therefore are not clearly erroneous. *Viebrock v. Gill*, 125 Idaho 948, 951, 877 P.2d 919, 922 (1994).

The evidence in this case supports the district court's implicit finding that a valid agreement for the payment of attorney fees existed. We conclude, however, that the district court's application of the agreement to the facts found was clearly erroneous.

The error of the district court arises from its interpretation of the language in section 6 that the agreement was to cover fees not paid by Acequia or "not previously paid by Rosemary Haley." The district court, from the calculations made, took this to mean fees previously paid *at the time of judgment.* The district court's initial determination was that "an outstanding balance of $44,252.79" existed. This amount was calculated by taking an initial amount of fees [1] and subtracting

---

1. We are uncertain, given the numbers used in the opinion, what amount the district court determined Haley incurred in fees during the time outlined in the agreement.

payments made prior to the time of trial. From the outstanding balance of $44,252.79, the district court subtracted $38,117.05 that was paid to the firm of Thompson, Hine and Flory.[2] The district court then awarded the amount of the balance, $6,135.74, to Haley. According to the terms of the agreement, however, each party was responsible for one-half of the amount of fees owed *at the time of the agreement.*

From the judgment entered by the district court, we are unable to determine what amount was initially owed for the period in question. It further appears that the district court subtracted amounts which reflected payments made by Haley after the effective date of the agreement, December 3, 1982. To do so, was erroneous. Finally, according to the agreement, each party was to be responsible for one-half of the amount. Even if the district court correctly determined that $6,135.74 was the proper amount owing at the time of the agreement, the amount should have been halved.

Therefore, we find it necessary to remand this case to the district court for further proceedings on the issue of attorney fees. As part of its judgment on remand, the district court should specify the following:

1. The total amount of fees incurred by Rosemary Haley from October 23, 1981, to December 2, 1982.

2. The total amount of fees incurred between October 23, 1981, and December 3, 1982, that were unpaid as of December 3, 1982.

3. The amount, if any, of fees outstanding on December 3, 1982, that were subsequently satisfied out of Clinton's assets (including his one-half share of any community assets applied to pay the fees).

4. The total amount of fees outstanding as of December 3, 1982, that have not been satisfied by community proceeds or from payments by Clinton.

Of the final determination—those fees outstanding as of December 3, 1982, that have not been satisfied by community funds—Haley is entitled to a judgment for one-half of that amount. Should this amount exceed the actual amount of fees still outstanding, Haley is also entitled to the balance of the judgment as reimbursement.

At trial, Haley sought an award of prejudgment interest on the amount of fees owing. Although Idaho Code Section 28–22–104 allows for prejudgment interest at a specified rate for "money due by express contract," such an award is only appropriate where the amount of liability is liquidated or capable of ascertainment by mere mathematical process. *Stoor's Inc. v. Department of Parks and Recreation,* 119 Idaho 83, 86, 803 P.2d 989, 992 (1990). In this case, such an award would not be appropriate. One of the main issues at trial was the amount of fees incurred and the amount that had been previously paid. In order to calculate the amount, the district court was required to make credibility determinations, examine conflicting documentary evidence and choose between competing arguments regarding differing sums. Thus, the amount of the award, if any, was not liquidated, nor was it capable of ascertainment by mere mathematical process. Accordingly, no award of prejudgment interest was warranted and such an award should not be considered on remand.

### B. Wrongful Transfer of Funds

Haley next asserts the district court erred in concluding that the community estate was not entitled to a return of funds allegedly misappropriated by Clinton from Acequia pursuant to count IV of the amended complaint. After this case was fully briefed and orally argued on appeal before this Court, an order was entered requiring additional briefing on the following issues:

1. Did Rosemary Haley (and does Michael J. Haley, as her successor in interest), as an individual possess a personal cause of action for recovery from Clinton of assets that belong to Acequia Corpora-

---

**2.** This amount is taken from the closing statement of the sale of the couple's Sun Valley property on November 19, 1987. The statement was attached to Haley's affidavit and showed that $38,117.05 was paid to Thompson, Hine and Flory from the proceeds of the sale. The document does not, however, indicate the amount of funds distributed to each party nor whether the payment was somehow attributable only to Haley's share of the funds.

tion, other than any rights she might possess as a shareholder to bring a shareholder's derivative action on behalf of the corporation?

2. Should the cause of action asserted in count IV of Haley's amended complaint be characterized as a shareholder's derivative claim against Clinton?

3. If count IV of Haley's amended complaint should be characterized as a shareholder's derivative claim, is such a derivative claim precluded by the fact that the corporation has either pursued the same cause of action or has never refused to assert such a cause of action following a shareholder's request that it do so?

The basis of Haley's claim stems from section 12 of the property settlement agreement. This section provided:

Each party has made a full and complete disclosure to the other party of all of his or her property, and neither party has knowledge of any property of any kind in which the parties, or either of them, have any beneficial interest, except that property identified, listed, and distributed herein. If it is later discovered that either party has possession or control, or has disposed by gift or conveyance, of any beneficial interest in any property not disclosed herein, such party, on demand of the other party, shall assign or convey to the other party a one-half interest therein ·or shall pay to the other party a sum equal to one-half the fair market value of all such beneficial interest.

It is understood that, prior to the date of this Agreement, Husband had the sole management of the property, business and affairs of Acequia, Inc., including, without limitation, the exclusive possession, control and management of the books, records and accounts of Acequia, Inc. Husband warrants hereby that he will make full and complete disclosure, in writing, to Wife and the accountant identified in Sections Six and Seven herein of all assets and liabilities of Acequia, Inc., past and present, existing and contingent, so that said accountant may properly and accurately conduct the audit and accounting provided for herein. Any material liabilities not disclosed to wife and said accountant shall be the obligation of Husband to assume, satisfy and discharge and Husband shall indemnify and hold Wife and Acequia, Inc. harmless from all claims, demands, and costs and expenses arising out of or in connection with any such undisclosed liabilities. *If it is later discovered that Acequia Inc. possesses or contains, or has a right to acquire, any assets, rights or any beneficial interests in property which were not so disclosed at the time of said audit and accounting or otherwise accounted for and divided in this Agreement, said assets or rights shall be assigned or conveyed to Acequia, Inc. or to the parties hereto, as appropriate, on a one-half, one-half basis.*

(Emphasis added).

The district court found that the federal court had already ruled on the issue of improper transfers by Clinton from Acequia. As to time periods not covered by the federal court proceedings, the district court found that there had been no showing that the transfers were improper or were for Clinton's personal use.

Initially, the issue is whether Haley had an individual cause of action to recoup corporate assets through an enforcement of the property settlement agreement's division of the community property or whether any right to recover alleged misappropriated funds belonged to Acequia.

Pursuant to section 12 of the property settlement agreement, any assets or rights discovered after the accounting "shall be assigned or conveyed to Acequia, Inc. or to the parties hereto, as appropriate, on a one-half, one-half basis." Acequia, as a corporation, remains an entity in itself. Thus, Acequia was vested with any cause of action against Clinton for improper transfer of funds from the corporation to his personal accounts. As noted, Acequia and Clinton litigated the issues in bankruptcy court.

We find no evidence that Acequia was asked, but refused, to pursue a claim to recoup the assets that Haley now seeks to recover from Clinton. In fact, the record shows that control of Acequia was eventually given to Haley. Although there are in-

stances where a shareholder may have an individual cause of action against another shareholder, this principle does not include a personal cause of action to recover assets which rightfully belong to the corporation, based upon another shareholder's transactions with the corporation. *See generally Jordan v. Hunter*, 124 Idaho 899, 865 P.2d 990 (Ct.App.1993) (corporate transaction not a transaction between shareholders); *Weatherhead v. Griffin*, 123 Idaho 697, 851 P.2d 993 (Ct.App.1992).

By this action, Haley is attempting to assert a separate, individual cause of action to recoup assets of the corporation through the enforcement of the property settlement agreement from a domestic relations claim. This action is not a shareholder derivative action nor an action by the corporation, Acequia, against Clinton. Further, we find no evidence of any impact the alleged improper transfers had the on value of Haley's shares of Acequia stock. Even assuming the corporation proceeded through bankruptcy, any assets would be applied first to the claims of creditors of Acequia and not distributed to the shareholders in derogation of the corporation's creditors' claims.

Therefore, we hold that Haley does not have an individual cause of action against Clinton for any alleged improper transfer of corporate funds from Acequia. Thus we affirm the order of the district court that the community is not entitled to a return of those funds albeit on a legal theory different from the one applied by the trial court. *In re Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct.App.1990).

## C. Attorney Fees on Appeal

■ Clinton seeks an award of attorney fees on appeal pursuant to Idaho Code Sections 12–120(3) and 12–121. An award under I.C. § 12–120(3) is not appropriate as the transaction in question does not fall within any of those enumerated in that section. In addition, because we have remanded the case for further proceedings on the calculation of the fee award, we cannot hold that either party prevailed on this appeal.

■ We believe an award under I.C. § 12–121 is also inappropriate. Under that section and I.R.C.P. 54(e)(1), a court may award attorney fees to the prevailing party where it finds that "the case was brought, pursued or defended frivolously, unreasonably or without foundation." Based on the record below and the arguments made on appeal, we cannot say the appeal was brought frivolously or unreasonably or that it lacked foundation. Thus, no award of attorney fees is appropriate on appeal.

## III.

### CONCLUSION

We vacate and remand for further proceedings on the issue of the payment of attorney fees pursuant to the 1982 agreement between Haley and Clinton. We affirm the district court's judgment that pursuant to the property settlement agreement the community is not entitled to the return of funds allegedly transferred from the corporation, Acequia, to Clinton for his personal use. Each party to bear their own costs and attorney fees on appeal.

WALTERS, C.J., and LANSING, J., concur.