10 P.3d 734

MAGIC VALLEY FOODS, INC., a corporation; and Rolland Jones Potatoes, Inc., a corporation, Plaintiffs–Respondents–Cross Appellants,

v.

SUN VALLEY POTATOES, INC., a corporation, Defendant–Appellant–Cross Respondent.

No. 24840.

Supreme Court of Idaho, Twin Falls, March 2000 Term.

July 7, 2000.

Rehearing Denied Oct. 12, 2000.

John A. Bradley, Burley, for appellants.

Bollar & Goodman, Rupert, for respondent. Alan C. Goodman argued.

KIDWELL, Justice.

This case involves a contract dispute arising from the non-delivery of and non-payment for potatoes. Plaintiffs alleged that defendants failed to deliver the potatoes contracted for, while defendant charged that it was excused from delivery because of plaintiffs' refusal to pay for past deliveries. Following a bench trial, the district court held that both sides had reasonable grounds for not performing the contract. We reverse and remand.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Appellant Sun Valley Potatoes, Inc. (Sun Valley) is a fresh packer of potatoes. Respondent Magic Valley Foods, Inc. (Magic Valley) is a processor of potatoes. Sun Valley and Magic Valley entered into three written contracts wherein Sun Valley agreed to sell and deliver and Magic Valley agreed to purchase potatoes. Subsequent to the written contracts, the parties also entered into a fourth contract which was not reduced to writing. The contracts were identified by the parties as 9415, 9416, 9418 and the oral contract 9470. During the negotiations on these contracts, Sun Valley was represented by its president, A.R. "Gus" Blase. Magic Valley was represented by Richard Johnson, a purchasing agent for Magic Valley.

The written contracts, which were all drafted by Magic Valley, were intended to follow the cycle of the potato crop for the 1994—1995 year. Thus, when delivery under one contract ended, delivery under the next contract would begin. The first contract, 9416, called for delivery of 200,000 hundred weight (cwt.) of potatoes to be delivered starting in August of 1994 and ending when delivery was complete. Even though Sun Valley did not deliver the entire 200,000 cwt., the parties agreed that the contract had been fulfilled when Sun Valley advised Magic Valley that it had ended its early season run.

The ledger sheet kept by Magic Valley showed that under contract 9416, Sun Valley provided nine weekly invoices, but none of those invoices were paid according to the term in all of the contract's "net thirty (30) days on amounts delivered on a weekly basis." Sun Valley was paid on three of the invoices on November 16, 1994. Sun Valley was paid for the remaining invoices under contract 9416 on January 19, 1995. Both of these payments were made to Sun Valley from a third corporation, Rolland Jones Potatoes, Inc. (Rolland Jones), a "sister company" of Magic Valley. At the time of the payments, Sun Valley owed money on an open account to Rolland Jones. To make payments, Rolland Jones would pay Sun Valley

for potatoes delivered to Magic Valley, but only if Sun Valley agreed to "trade checks" with Rolland Jones for the amounts that Sun Valley owed to Rolland Jones. Richard Johnson of Magic Valley testified that Sun Valley was "held hostage" under the trading of checks, which had been initiated by Rolland Jones. None of the contracts between Magic Valley and Sun Valley provided for a trading of checks for payment.

The second contract, 9415, called for another 200,000 cwt. of potatoes to be delivered starting in September of 1994 and running until February of 1995. The parties agreed that this contract was filled when Sun Valley delivered 200,154.3 cwt. of potatoes. Magic Valley's invoices under contract 9415 totaled 25 in all. As with contract 9416, none of the contracts were paid pursuant to the contract's 30–day provision. On January 19, 1995, Rolland Jones paid Sun Valley for 11 of the 25 invoices by trading checks. This was the last time Sun Valley traded checks with Magic Valley; thereafter Magic Valley simply mailed a check to Sun Valley without requiring Sun Valley to tender a check back to Rolland Jones. Each of the deliveries to Magic Valley was accepted and processed by Magic Valley. At trial the parties stipulated that Magic Valley still owed Sun Valley $109,478.63 on contract 9415.

The third written contract was number 9418 which called for 300,000 cwt. of potatoes to be delivered by Sun Valley between February 1995 and July 1995. Prior to the commencement of contract 9418, however, the parties entered into an oral contract, 9470. This contract called for either 30,000 or 50,000 cwt. (the parties did not agree at trial) of potatoes to be delivered at a price of $2.50/cwt. compared to the $1.13/cwt. of the three written contracts. The need for this contract arose because Sun Valley was having difficulty in obtaining potatoes from growers on consignment to deliver at the low contract price. Sun Valley began delivering under contract 9470 on January 3, 1995 and completed delivery on February 28, 1995. Even though the parties could not agree at trial as to how many cwt. were to be delivered, Magic Valley accepted and processed 56,536.4 cwt. of potatoes that Sun Valley delivered under contract 9470. The parties agreed that contract 9470 was fulfilled and did not dispute the price owed to Sun Valley.

Due to deliveries under contract 9470, deliveries under contract 9415 were interrupted. The parties contemplated this when they entered into contract 9470. The parties agreed to extend the delivery date of contract 9415 until May of 1995. Sun Valley filled contract 9415 prior to May of 1995.

On May 31, 1995, Sun Valley commenced delivery on the last contract, 9418. Since contract 9415 had extended late, it was agreed that contract 9418 could also be extended. The extension was until either September or October of 1995 (the parties did not agree at trial as to the length of the extension).

Sun Valley continued to deliver under contract 9418 until August 8, 1995, when Sun Valley ceased its deliveries under contract 9418 because it had not been paid for any of the ten invoices under contract 9418, nor for 14 invoices remaining on contract 9415. Thus, as of August 9, 1995, Magic Valley owed Sun Valley $234,070.44 for deliveries under contracts 9415 and 9418. In August of 1995, Sun Valley informed Magic Valley that no more potatoes would be delivered under contract 9418 unless Magic Valley made a significant payment on the delinquent accounts. Magic Valley did not make any further payments to Sun Valley on the $234,070.44 debt. At trial, Sun Valley admitted that it still owes Rolland Jones $31,-304.47. During the time Sun Valley delivered on contract 9418 from May 31 to August 8 of 1995, Sun Valley delivered to other producers for a higher price than that in the contracts. These potatoes were of the same grade as those called for in contract 9418. On August 30, 1995, Magic Valley made a written demand for delivery of the remaining 191,831.1 cwt. of potatoes that Sun Valley owed under contract 9418. Sun Valley replied that it would not perform absent payment. Because of a lack of potatoes to process, the Magic Valley processing plant ceased operations for 14 days in August of 1995, until it was able to procure potatoes from another source.

In September of 1995, Magic Valley and Rolland Jones brought suit against Sun Valley. Following a two-day court trial in Feb-

ruary of 1998, the district court entered its findings of fact and conclusions of law on May 8, 1998. The district court concluded that because Sun Valley had not insisted on strict compliance with the 30–day payment rule, it could not unilaterally repudiate the contract due to late payments. The district court also ruled that Magic Valley was entitled to offset the $236,904.44 it owed Sun Valley against the $231,660.60 it incurred as a result of its processing plant being down for 14 days and the loss of profits associated therewith. The district court also ruled that Magic Valley was not entitled to the amount it expended to get potatoes from the other suppliers, since Magic Valley sought cover prior to the end of the time Sun Valley had to deliver. Finally, the district court ruled that after Magic Valley's offset, Sun Valley still owed Rolland Jones $26,060.63.

On July 9, 1998, Magic Valley filed its notice of appeal. Sun Valley filed its notice of cross-appeal on July 19, 1998.

## II.

## STANDARD OF REVIEW

 This Court will defer to the district court's findings of fact if they are supported by substantial and competent evidence; however this Court will freely review the conclusions of law reached by stating legal rules and applying them to the facts found. *Great Plains Equip. v. N.W. Pipeline*, 132 Idaho 754, 760, 979 P.2d 627, 633 (1999). In a case tried before the court, the court's findings will be liberally construed on appeal in favor of the judgment entered. *Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999). Where the findings of facts are based on substantial evidence they will not be overturned on appeal, even if the evidence is conflicting. *Id.*

## III.

## ANALYSIS

### A. Sun Valley Was Entitled To Withhold Delivery On Contract 9418 Because Of Magic Valley's Chronic Delinquency And Non–Payment On Prior Contracts.

Sun Valley contends that it was entitled to cancel contract 9418 or withhold delivery be-

cause Magic Valley breached the contract by failing to comply with the contract's payment terms. The district court held that Sun Valley could not unilaterally repudiate the contract because it had failed to require strict compliance with the 30–day payment requirement. However, the district court also held that by August 9, 1995, Magic Valley was so delinquent that Sun Valley was justified in withholding further deliveries.

Because this case involves the sale of goods, it is within the scope of the Uniform Commercial Code (UCC) as adopted in Idaho. I.C. § 28–2–102; *Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 212, 984 P.2d 697, 700 (1999). The parties to this case do not dispute the existence nor the validity of the contracts, but rather contend that the contracts have been breached.

### 1. Sun Valley did not waive the 30–day payment requirement.

 In each of the contracts drafted by Magic Valley and agreed to by Sun Valley, the payment terms were "net 30 days on amounts delivered on a weekly basis." The district court held that since Magic Valley had been late on every payment, "strict compliance of the payment term was waived" by Sun Valley, and thus Sun Valley could not use Magic Valley's late payments as an excuse to unilaterally repudiate the contract.

 In order to find a waiver of a contract provision, the "party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment." *Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 256, 846 P.2d 904, 907 (1993). In addition, the intention to waive must be clearly present. *Id.*

In this case, Magic Valley asserted that its reliance on Sun Valley's waiver of the 30–day payment requirement should be inferred because of Sun Valley's lack of demand for payment. Magic Valley also argues that it detrimentally relied upon Sun Valley's waiver when it made arrangements to purchase cover potatoes from other suppliers.

Magic Valley's argument is not logical. The fact that Magic Valley sought cover in case Sun Valley did not deliver enough potatoes does not show that Magic Valley detrimentally relied upon Sun Valley's acceptance of late payments. The fact that Magic Valley sought cover only shows that Magic Valley was concerned that Sun Valley would not deliver all of the potatoes contracted for. Thus, Magic Valley has failed to show that it detrimentally relied on Sun Valley's alleged waiver.

### 2. Magic Valley was not justified in its anticipatory repudiation.

■ As outlined by Defendant's Exhibit A, Magic Valley was making payments to Sun Valley each month from January to June of 1995. However, the monthly payments during this time were never enough to eradicate the growing balance being carried by Sun Valley. Even with these payments, the balance Sun Valley was carrying grew to $236,904.44 by August 9, 1995. Thus, even if Sun Valley had waived its right to 30–day's payment, it was justified at some point in withholding deliveries due to Magic Valley's failure to bring its account current.

The district court held that even though "the contract was repudiated in mid September by MVF," and "MVF in effect repudiated 9418 by not paying in response to SVP's demands," Magic Valley was eventually justified in withholding payment to Sun Valley and was also entitled to damages because Sun Valley anticipatorily repudiated the contract by withholding deliveries past August 6, 1995. To support this holding, the district court pointed out that: (1) Sun Valley had stopped deliveries under contract 9418 on August 9, even though Sun Valley had until at least the end of September to complete the contract; and (2) that during the time of delivery under contract 9418, Sun Valley was sending potatoes to other producers at a higher price.

The UCC provides that when a buyer under an installment contract makes installments which "substantially impairs the value of the whole contract there is a breach of the whole." I.C. § 28–2–612(3). As explained in the comments to that section:

[A] seller may withhold a delivery pending payment for prior ones, at the same time delaying his decision as to cancellation. A reasonable time for notifying of cancellation, judged by commercial standards under the section on good faith, extends of course to include the time covered by any reasonable negotiation in good faith.

I.C. § 28–2–612 (comment 7).

As of August 9, 1995, Sun Valley had delivered 108,169 cwt. (at the contract price of $1.13 cwt.) of potatoes to Magic Valley under contract 9418. Magic Valley, on the other hand, had withheld payments totaling $236,904.44 on contracts 9415 and 9418. During this time, Sun Valley had also been providing potatoes to other suppliers at a higher price.

The district court found that sometime in August (the exact time was not determined) a meeting was held between Gus Blase of Sun Valley and Richard Johnson of Magic Valley. At this meeting "Blase made it clear no more potatoes would be delivered absent significant payment."

Thus, Sun Valley had the right on August 9, 1995 to cancel contract 9418 because Magic Valley breached the contract. Sun Valley justifiably withheld delivery under contract 9418 on August 9, 1995, by refusing to deliver more potatoes absent payment by Magic Valley. Sun Valley then timely notified Magic Valley of its intent to cancel by informing Magic Valley's representative that it would not make any more deliveries absent payment. The district court correctly concluded that Sun Valley was justified in withholding deliveries under contract 9418 because of Magic Valley's lack of significant payment.

### 3. Sun Valley could have completed contract 9418.

■ The district court found that during the time Sun Valley was making deliveries under 9418, it was also making deliveries to other producers at a higher price. Therefore, the district court held that because "[i]t was obvious that SVP was either unable or unwilling to tender complete performance, even within the extended time frame," Magic

Valley "was eventually justified in withholding payment." However, the district court's reasoning is not supported by its findings of fact.

While not included in the district court's findings of fact, both Gus Blase and Richard Johnson testified that they understood the completion date under contract 9418 had been extended. Both sides testified at trial: Johnson that he thought it had been extended into September, and Blase that it was extended for 60 to 90 days. Thus, even under Magic Valley's understanding, Sun Valley still had until the end of September to complete performance. Furthermore, Blase testified that the 1994 crop year ended on August 8, but that the new crop year would begin only a few days later. Therefore, it was conceivable that Sun Valley could have completed delivery under contract 9418 within the extended period of time.

In fact, the district court ruled that "SVP did have at least through September to perform as best it could or would. Maybe though October. Either time was after MVF in effect repudiated 9418 by not paying in response to SVP's demands." The district court then proceeded to hold that Magic Valley was entitled to setoff against Sun Valley because Sun Valley breached the contract. However, there is no evidence in the record to show that Sun Valley could not have completed the contract by delivering potatoes from the new 1995 crop year. The district court erred in holding that because Sun Valley was not going to finish delivery anyway, that Magic Valley was justified in withholding payment.

### 4. Magic Valley failed to seek adequate assurances before repudiating the contract.

█ In an attempt to justify withholding payment, Magic Valley claims that because Sun Valley did not deliver on contract 9418, Magic Valley was forced to enter into contracts for cover in July of 1995. Magic Valley bolsters this claim by arguing that as early as March 1995 Sun Valley began delivering potatoes to third parties.

In such a situation the UCC provides that "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." I.C. § 28–2–609(1).

Magic Valley failed to comply with this statute in two respects. First, Magic Valley did not seek assurances until the end of August 1995, but withheld payment from Sun Valley months prior to that. Thus Magic Valley had already began suspending its performance to pay, months prior to seeking assurances that Sun Valley would deliver. Second, at the time Magic Valley was seeking assurances in August, it had already received the potatoes for which payment was owed. The statute allows suspension of performance only "for which he has not already received the agreed return." Thus, because Magic Valley had already received the potatoes under contract 9418 and the previous contracts, it was obligated to pay without regards to Sun Valley's assurances of completion of contract 9418.

If Magic Valley was concerned that it was not going to get the potatoes it had contracted for, it should have sought reasonable assurances from Sun Valley in March, when it learned that Sun Valley was shipping to other processors.

In conclusion, Magic Valley breached contract 9418 by unreasonably withholding payment to Sun Valley on contract 9418 and previous contracts. Sun Valley did not anticipatorily breach because it had completed the requirements of the previous contracts and had at least through the month of September to compete contract 9418. Magic Valley had no justifiable reason to withhold payment on either of the previous contracts or 9418. Because Magic Valley breached the contract by not paying Sun Valley's invoices, Sun Valley was justified in withholding the remaining potatoes under contract 9418. The district court erred in holding that Sun Valley breached the contract and that Magic Valley was entitled to offset its damages against the amount owed to Sun Valley.

## B. Magic Valley Was Not Entitled To Withhold Payments To Sun Valley For Sun Valley's Debt To Rolland Jones.

█ Sun Valley claims that one of the reasons Magic Valley withheld payment was because Sun Valley refused to trade checks. Magic Valley asserts that Sun Valley's failure to trade checks was only one of the reasons why it withheld payments.

At trial Bill Schow, Vice President of Magic Valley, testified that Magic Valley did not pay on contract 9418 because Sun Valley refused to trade checks.

Q: In connection with contract 9418, do you have some indication as to payment by Magic Valley Foods or Rolland Jones Potatoes under contract 9418 for the potatoes that were delivered? Do you know whether any payment was made or not?

A: There was no payment made .... well, it goes back to trading their checks again. We tried to make a payment—at least a partial payment—and we weren't able to make the trade in checks. And then it become [sic] obvious to me that I was going to be way short on contract 9418 and I suggested that maybe we'd better – if we can't trade checks, then we'd better be talking about [not] paying at all, because we're going to get hurt in this deal.

Regarding the trading of checks, at trial Richard Johnson was asked on cross-examination "Basically you're holding Sun Valley hostage then, are you not Richard?" to which Johnson replied, "Well, I guess for lack of terms, that's what was happening."

Thus, Magic Valley representatives testified that Magic Valley was not willing to make payment to Sun Valley unless Sun Valley traded checks with Magic Valley for money Sun Valley owed to Rolland Jones. As previously mentioned, the contracts between Sun Valley and Magic Valley did not include a requirement that Sun Valley trade checks with Rolland Jones as a condition of payment. In fact, as the district court found, Rolland Jones was not a party to these contracts.

While it appears that Idaho courts have not considered this issue before, the UCC does provide some guidance. Section 28–2–610 of the Idaho Code deals with anticipatory repudiation. Comment 2 of this section explains:

Under the language of this section, a demand by one or both parties for more than the contract calls for in the way of counter-performance is not in itself a repudiation nor does it invalidate a plain expression of desire for future performance. However, when under a fair reading *it amounts to a statement of intention not to perform except on conditions which go beyond the contract, it becomes a repudiation.*

I.C. § 28–2–610 (comment 2) (emphasis added).

In this case, Magic Valley's representatives testified they would not make payments to Sun Valley unless Sun Valley agreed to trade checks for money it owed to Rolland Jones. Since Magic Valley did not pay because of Sun Valley's refusal to submit to conditions outside the contract, it amounted to a repudiation by Magic Valley.

## C. Magic Valley Has No Damages With Which To Seek An Offset.

Magic Valley argues that since Sun Valley anticipatorily repudiated the contract, Magic Valley has a statutory right to offset its damages against the amount owed to Sun Valley. However, since we have determined that Magic Valley was the party in breach, we hold that Magic Valley does not have any damages upon which it may seek an offset.

## D. The District Court Did Not Err In Holding That Magic Valley Was Not Entitled To Its "Cost of Cover."

█ Magic Valley claims that the district court erred in holding that the cost of Magic Valley's cover was too speculative to be included in Magic Valley's damages. Magic Valley claims that once an anticipatory breach is established, the cost of cover is a statutory remedy.

The district court ruled that:

MVF is not entitled to extra moneys (sic) expended to "cover" by purchasing more expensive potatoes. While this court finds that all of the 191,000 + cwt contractually

required would not have been delivered, it cannot find that none of the amount would have been delivered had SVP been paid. The market place also fluctuated. Hence, it is unduly speculative to award damages lost by MVF because of the market upswing. SVP did have at least through September to perform as best it could or would. Maybe through October. Either time was after MVF in effect repudiated 9418 by not paying in response to SVP's demands.

As determined in issue A it was Magic Valley who repudiated the contract by not timely paying Sun Valley. Thus, Magic Valley is not entitled to any damages against Sun Valley. Magic Valley has argued that it was Sun Valley who breached the contract by not delivering potatoes through August of 1995. Yet Magic Valley points out that it began seeking cover in June of 1995. At the earliest, Sun Valley could not have breached until it stopped deliveries on August 9, 1995. Thus, prior to that time there was no need for Magic Valley to seek cover.

The Idaho Code provides that:

(1) *After a breach* within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined . . . but less expenses saved in consequence of the seller's breach.

I.C. § 28–2–712(1)-(2) (emphasis added).

The Idaho Code clearly sets out that cover may be awarded if sought after a breach of contract has occurred. In the present case, Magic Valley admitted that it began seeking cover months before Sun Valley's alleged breach. Therefore, Magic Valley is not entitled to recover its cost of cover. We affirm the district court's decision inasmuch as it found the same.

## F. Sun Valley Is Entitled To Prejudgment Interest.

Prejudgment interest is available only when the damages are liquidated or are ascertainable by mere mathematical process. *Doolittle v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 805, 811, 919 P.2d 334, 340 (1996). In the present case, the district court determined factually that "[a]s of August 9, 1995, MVF owed to SVF under contracts 9415 and 9418 an aggregate of $234,070.44." Thus, we hold that Sun Valley's damages were liquidated, entitling Sun Valley to an award of prejudgment interest. The problem, however, is that the district court also noted that it was "admitted that MVF owes SVF $236,904.44." Therefore, we cannot determine from the record which amount was ascertainable by at least August 9, 1995. Thus, we remand the matter to the district court for a determination of the liquidated amount, the date it became ascertainable, and a determination of the amount of prejudgment interest owed to Sun Valley.

## IV.

## CONCLUSION

Sun Valley was justified in withholding further deliveries under contract 9418 because of Magic Valley's refusal to eradicate its growing balance despite demands from Sun Valley. The district court erred in holding that Magic Valley was justified in withholding payments because of Sun Valley's lack of deliveries past Magic Valley's breach.

Attorney fees are not awarded on appeal. Costs are awarded to Sun Valley.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.